**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
jdiamond@bursor.com

[*Additional counsel listed on signature page*]

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re InMarket Media Location Data Tracking Litigation | CASE NO. 3:24-CV-00511-JSC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT INMARKET MEDIA, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 3, 2024<br>Time: 10:00 a.m.<br>Dept: 8, 19th Floor<br>Judge: Hon. Jacqueline Scott Corley |

## TABLE OF CONTENTS

**PAGE(S)**


STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(a)(3) .................................... 1

INTRODUCTION ........................................................................................................ 2

STATEMENT OF FACTS ............................................................................................. 4

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT ............................................................................................................... 7

I. DEFENDANT VIOLATED COMMON LAW AND CONSTITUTIONAL PRIVACY PROTECTIONS BY SURREPTITIOUSLY COLLECTING PLAINTIFFS' AND CLASS MEMBERS' PRIVATE GEOLOCATION DATA. ................................................ 7

A. Plaintiffs Have A Reasonable And Protectable Privacy Interest In Their Private Location Data. ................................................................................ 7

B. InMarket's Conduct Was Offensive And Egregious. ............................................ 10

C. InMarket Acted Intentionally. ................................................................................ 11

II. DEFENDANT VIOLATED CDAFA BY KNOWINGLY ACCESSING PLAINTIFFS' AND CLASS MEMBERS' SMARTPHONES WITHOUT CONSENT. ............................ 11

III. DEFENDANT'S SDK SPYWARE IS AN ILLEGAL PEN REGISTER. ........................... 14

IV. DEFENDANT VIOLATED CIPA BY EAVESDROPPING ON PLAINTIFFS' COMMUNICATIONS AND BY USING THE EAVESDROPPED COMMUNICATIONS. ........................................................................................... 17

A. Defendant Eavesdropped Upon The Contents Of Plaintiffs' Electronic Communications In Violation Of CIPA. ............................................................ 17

B. In Further Violation Of CIPA, Defendant Unlawfully Used The Contents Of The Eavesdropped Communications. ............................................................... 19

V. COURTS REGULARLY ALLOW UNJUST ENRICHMENT CLAIMS TO PROCEED AS QUASI-CONTRACT CLAIMS FOR RESTITUTION. ............................. 20

VI. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE UCL. ............................... 20

CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 20

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,
718 F. Supp. 2d 1167 (N.D. Cal. 2010) .......... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 17

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 12, 20

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .......... 18, 19

*Carpenter v. United States*,
138 S. Ct. 2206 (2018) .......... 2, 7

*Conley v. Gibson*,
355 U.S. 41 (1957) .......... 6

*D'Angelo v. FCA US, LLC*,
2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) .......... 9, 10

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. Mar. 18, 2024) .......... 9, 12, 13, 17

*Garmon v. Cnty. of Los Angeles*,
828 F.3d 837 (9th Cir. 2016) .......... 20

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... passim

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 9

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) .......... 17, 19

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Google Location History Litig.*,
428 F. Supp 3d 185 (N.D. Cal. 2019) .......... 8

*In re Google Location History Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 8, 10, 20

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 19

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) .......... 17

*Jordan v. Wonderful Citrus Packing LLC*,
2018 WL 4350080 (E.D. Cal. Sept. 10, 2018) .......... 20

*Letizia v. Facebook Inc.*,
267 F. Supp. 3d 1235 (N.D. Cal. 2017) .......... 20

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 10

*McDonald v. Kiloo ApS*,
385 F.Supp.3d 1022 (N.D. Cal. 2019) .......... 7

*Moody v. C2 Educ. Sys. Inc. et al.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024) .......... 14, 15, 16

*Murphy v. Kochava Inc.*,
2023 WL 6391061 (D. Idaho Oct. 2, 2023) .......... 8

*Riley v. California*,
573 U.S. 373 (2014) .......... 7

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) .......... 7

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .......... 7

*United States v. Ogden*,
2021 WL 858467 (N.D. Cal. Mar. 8, 2021) .......... 16

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 18

**STATUTES**

18 U.S.C. § 2510(8) .......... 17

Cal. Bus. & Prof. Code § 17200 .......... 1, 2

Cal. Bus. & Prof. Code § 17204 .......... 20

Cal. Penal Code. § 502 .......... 1, 2, 11

Cal. Penal Code § 631 .......... 1, 17, 18, 19

Cal. Penal Code § 638.50 .......... 14, 15, 16

Cal. Penal Code § 638.51 .......... passim

**RULES**

Fed. R. Civ. P. 8(a)(2) .......... 6

Fed. R. Civ. P. 15(a)(2) .......... 20

**STATEMENT OF ISSUES TO BE DECIDED PER CIVIL L. R. 7-4(a)(3)**

1. Whether Plaintiffs' allegations that Defendant surreptitiously collected, aggregated, and sold Plaintiffs' personal and private location histories, obtained from their smartphones without their consent, state common law and constitutional claims for violation of privacy.

2. Whether Plaintiffs state a claim for violation of the California Computer Data Access and Fraud Act, Cal. Penal Code. § 502, where Defendant used its software development kit (SDK) spyware known as "InMarket SDK" to access Plaintiffs' geolocation data from their smartphones without Plaintiffs' consent, and then sold Plaintiffs' geolocation data (along with other data) to advertisers, thereby enriching itself with the data accessed from Plaintiffs' smartphones.

3. Whether Plaintiffs state a claim for violation of Cal. Penal Code § 638.51 based on illegal use of a pen register where California federal courts, including in *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), have concluded that SDKs nearly identical to the one used by Defendant are pen registers and violate § 638.51 when used to obtain information without consent or a court order.

4. Whether Plaintiffs state a claim for violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a) where Plaintiffs pled that Defendant, using its InMarket SDK spyware, accessed their personal information and communicative interactions with and within software applications, aggregated it with other data, and then sold Plaintiffs' data to advertisers.

5. Whether Plaintiffs have standing to bring a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, where they have a stake in the profits Defendant garnered from their personal data, which Defendant continues unjustly to retain.

6. Whether Plaintiffs may proceed with a standalone unjust enrichment claim because courts routinely hold that such claims act as quasi-contract claims for restitution.

**INTRODUCTION**

Defendant InMarket Media, LLC ("Defendant" or "InMarket") secretly gathers, aggregates, and sells vast amounts of time-stamped, precise geolocation data from consumers' cell phones without their consent. That "data provides an intimate window into a person's life, revealing not only his particular movements, but through them his familial, political, professional, religious, and sexual associations," *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (internal quotations and citations omitted). Defendant's conduct is an unlawful invasion of statutory, common law, and constitutional privacy protections. Indeed, Defendant recently entered into a Consent Agreement with the Federal Trade Commission (FTC) following a complaint arising from this same conduct, which restrains Defendant from selling or licensing certain location data and from categorizing or targeting consumers based on sensitive location data (including reproductive health centers, mental health facilities, religious organizations, and locations of political gatherings).[1]

Now, Plaintiffs Autry Willis and Kenneth Kruger ("Plaintiffs") seek to redress these privacy violations on behalf of themselves and a putative class of "[a]ll persons who reside in California whose data, including but not limited to their geolocation data, was collected by Defendant without their consent." ¶ 67. They assert claims for (i) invasion of privacy under common law and under the California Constitution, (ii) violation of the California Computer Data Access and Fraud Act, Cal. Penal Code. § 502 ("CDAFA"), (iii) unlawful use of a pen register or trap and trace device, § 638.51, (iv) violation of the California Invasion of Privacy Act ("CIPA"), (v) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"), and (vi) unjust enrichment.

*First*, Defendant violated California Constitutional and common law privacy protections because Plaintiffs have a reasonable and legally protected expectation of privacy in their location data, and Defendant's invasion of that privacy—by secretly collecting, aggregating, and selling information about Plaintiffs' whereabouts—was highly offensive.

---

[1] The FTC's Decision is available at: https://www.ftc.gov/system/files/ftc_gov/pdf/InMarketMedia-DecisionandOrder.pdf (last visited 8/7/24).

*Second*, Defendant violated CDAFA because it unlawfully accessed Plaintiffs' sensitive geolocation data by surreptitiously embedding its InMarket SDK spyware within the third-party applications downloaded by Plaintiffs that, without Plaintiffs' permission, functioned to transfer their data to Defendant, which Defendant then used for its pecuniary gain. Defendant was unjustly enriched by accessing and selling Plaintiffs' data without permission.

*Third*, Defendant's InMarket SDK spyware satisfies the definition of a "pen register" under Cal. Penal Code § 638.51 because it is a "process" that records addressing or signaling information—Plaintiffs' and Class Members' location data and personal information—from the electronic communications transmitted by their smartphones. ¶ 104[2]. In *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050-51 (S.D. Cal. 2023), the court found that embedded SDK software used to collect, among other things, geolocation data, constituted a pen register under California law. The same conclusion should follow here.

*Fourth*, Defendant violated CIPA by implanting its InMarket SDK spyware within third-party software applications that communicated to Defendant "the user's affirmative actions, such as clicking a link, installing an app, selecting an option, or relaying a response," and by accessing Plaintiff's "personal communications with others," in addition to Plaintiffs' and Class Members' geolocation data. ¶¶ 112, 128-129. Defendant further violated CIPA because it used the information it unlawfully accessed by selling it to advertisers for pecuniary gain. ¶ 115.

*Fifth*, under California law, analogous unjust enrichment claims are construed as quasi-contract claims for restitution that are cognizable.

*Sixth*, Defendant violated the UCL by unfairly and unlawfully obtaining and selling Plaintiffs' private data. Plaintiffs have standing to bring this claim because they have a stake in the profits Defendant garnered from that data.

For all these reasons and those discussed further in this brief, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

[2] All citations to "¶ __" refer to paragraphs of the Consolidated Amended Class Action Complaint ("Complaint," ECF No. 26) unless otherwise noted.

## STATEMENT OF FACTS

Defendant illegally acquired consumers' precise geolocation data and other data without authorization, aggregated it with other data points, and then monetized the data. *See* ¶ 1. Specifically, Defendant collects and stores users' precise location data, which can be used to track their private movements to and from sensitive locations revealing where users work, where they live, where their children go to school, where they receive medical care (including reproductive health care or mental health care), where they conduct religious worship, and their political affiliations (as gleaned from attendance at rallies or protests). Defendant did so in two ways: through its own smartphone applications ("InMarket Apps"),[3] and through its InMarket SDK spyware, which is embedded into hundreds of popular third-party applications. ¶¶ 1-3, 20, 23, 27. In this manner Defendant surreptitiously acquired and sold Plaintiffs' and Class Members' data without their consent. ¶ 4.

Through use of the InMarket SDK spyware, Defendant monitors, tracks, and identifies Plaintiffs and Class Members in real time. That is, the InMarket SDK spyware captures the device's precise latitude and longitude along with a timestamp and unique mobile device identifier and transmits the data directly to Defendant's servers. ¶¶ 21, 25. Defendant retains Plaintiffs' and Class Members' data for up to five years. ¶ 28.

Worse than that, and also without consent, Defendant aggregates Plaintiffs' and Class Members' location data with other data points about them to develop a consumer profile for each user, which is then sold or auctioned to advertisers for the purpose of sending targeted advertising to them. ¶¶ 4, 6, 29, 39-41. Specifically, if a consumer's past location data shows that she has visited a car dealership, InMarket can combine that information with the consumer's attributes purchased

[3] The InMarket Apps consist of applications created by Defendant and software applications that Defendant acquired from third parties. ¶¶ 42, 48-52. Two examples of InMarket Apps are CheckPoints (which offers shopping rewards for completing tasks within the application) and ListEase (which creates shopping lists). ¶ 42. Both applications demonstrate Defendant's business model of providing applications that are free to download for the purpose of gaining widespread use and then surreptitiously collecting users' data for purposes of downstream sales to advertisers, as well as for displaying in-application advertising. ¶¶ 42-44. Both applications also demonstrate Defendant's failure to obtain informed consent, as both applications only directly inform consumers that location data will be used for the application's functionality and not to acquire and sell said data as part of Defendant's larger advertising business. ¶¶ 45-47.

from other sources (age, income, family structure, education level), and can potentially predict that she may be in the market for a certain type of vehicle. ¶ 35.

Using the data collected through its applications and the InMarket SDK spyware, Defendant sorts users into almost 2,000 distinct audience segments for purposes of sending targeted advertisements. ¶¶ 31-32. For example, an InMarket brand client (usually brands of consumer products and advertising agencies) can target shoppers who are likely to be low-income millennials; well-off suburban moms; parents of preschoolers, high-school students, or kids who are home-schooled; Christian church goers; convenience-sensitive or price-sensitive; single parents or empty-nesters; affluent savers or blue collar workers; "healthy or wealthy" or "wealthy and not healthy," to name only a selection of the categories InMarket offers or has offered to its brand clients. ¶¶ 29, 33.

Using this data, Defendant's InMarket SDK displays ads and determines which ads appear on software applications using InMarket SDK, and additionally offers advertisers the ability to send push notifications to a consumer's phone based on the consumer's location through "geofencing" (the creation of a virtual fence around a particular destination such that when a consumer enters the geofenced area, the consumer is sent a push notification to his or her phone advertising goods or services available at the particular location). ¶¶ 36-37. For example, a consumer who is within 200 meters of a pharmacy might see an ad for toothpaste, cold medicine, or some other product sold at that location. ¶ 38.

For InMarket Apps, Defendant does not notify consumers that their location data will be sold or auctioned for the purpose of generating targeted advertising. ¶ 22. For third-party applications containing the InMarket SDK spyware, Defendant fails to ensure that the owners of said third-party applications adequately notify consumers that their location data will be sold or auctioned for the purpose of generating targeted advertising. *Id.*; *see also* ¶ 30. Defendant does not require third-party applications using the InMarket SDK spyware to obtain informed consent from consumers. ¶ 54. Indeed, Defendant does not even provide third-party application owners with sufficient information to obtain informed consent from consumers because its contract with third-party developers merely states that it will serve advertisements on the developer's applications, but not that information

collected will be supplemented with purchased data to create consumer profiles to be sold or auctioned to advertisers. ¶¶ 56-58.

The reach of Defendant's unlawful conduct is vast, as Defendant's InMarket SDK spyware is incorporated into over 300 third-party applications that have been downloaded onto over 390 million unique devices since 2017. ¶ 23. That is more than the entire population of the United States, suggesting that the vast majority of smartphone users—particularly those with numerous applications downloaded on their devices—are subject to the conduct at issue. *See, e.g.*, https://www.census.gov/popclock/; *see also* ¶ 26 ("[F]rom 2016 to the present, about 100 million unique devices sent Defendant location data *each year*.").

Plaintiff Willis and Plaintiff Kruger both downloaded third-party software applications that were embedded with Defendant's InMarket SDK spyware, which resulted in Defendant harvesting their precise geolocation data, aggregating that data with other data about them to form a consumer profile, and selling or auctioning their data for profit to advertisers for the purpose of sending them targeted advertising. ¶¶ 7-8; 10-11. Neither Plaintiff Willis nor Plaintiff Kruger consented to having their geolocation data sold to third parties, and had they known it was Defendant's practice to do so, they would not have used the software applications containing Defendant's InMarket SDK spyware. ¶¶ 9, 12. By unlawfully obtaining and selling Plaintiffs and Class Members' data without consent, Defendant has caused injury and has been unjustly enriched. ¶¶ 6, 60-63.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure require only that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (hereinafter, "*Facebook Internet Tracking*"). Thus, in deciding a

Rule 12(b)(6) motion, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## ARGUMENT

### I. DEFENDANT VIOLATED COMMON LAW AND CONSTITUTIONAL PRIVACY PROTECTIONS BY SURREPTITIOUSLY COLLECTING PLAINTIFFS' AND CLASS MEMBERS' PRIVATE GEOLOCATION DATA.

Plaintiffs adequately plead a claim for invasion of privacy under both the California Constitution and common law privacy laws. These claims share similar elements and are plausibly alleged where "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Internet Tracking*, 956 F.3d at 601. When, as here, both causes of action are pleaded in the same complaint, courts evaluate the two causes of action together. *Id.*; *see also McDonald v. Kiloo ApS*, 385 F.Supp.3d 1022, 1037 (N.D. Cal. 2019).

#### A. Plaintiffs Have A Reasonable And Protectable Privacy Interest In Their Private Location Data.

The Supreme Court has held "that an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell phone call records]." *Carpenter v. United States*, 138 S. Ct. at 2217; *see also Riley v. California*, 573 U.S. 373, 397-99 (2014) (holding that individuals have a reasonable expectation of privacy in the contents of their cell phones). Likewise, the Ninth Circuit recognized in *Facebook Internet Tracking* that a defendant's "allegedly surreptitious and unseen data collection" of consumers' whereabouts on the Internet violated their "reasonable expectation of privacy." 956 F.3d at 601-02 (9th Cir. 2020). "[I]ndividuals maintain the expectation that entities will not be able to collect . . . broad swaths of personal information absent consent." *Id.* at 604 n.7.

"The question is not necessarily whether Plaintiffs maintained a reasonable expectation of privacy in the information in and of itself," but "whether the data itself is sensitive *and* whether the manner it was collected . . . violates social norms." *Id.* at 606 (emphasis in original) (rejecting the

suggestion "that Plaintiffs need to identify specific, sensitive information that Facebook collected," instead of "their more general allegation that Facebook acquired 'an enormous amount of individualized data'").

Since the Ninth Circuit issued its decision in *Facebook Internet Tracking*, numerous lower courts have upheld invasion of privacy claims against defendants who, like InMarket, surreptitiously collect consumer's physical location data through cell phones. *See, e.g.*, *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021); *Greenley*, 684 F. Supp. 3d at 1046-47; *Murphy v. Kochava Inc.*, 2023 WL 6391061 (D. Idaho Oct. 2, 2023).

Defendant nevertheless contends that Plaintiffs do not have "a reasonable and protectable privacy interest" in their own personal and private geolocation data. *See* Motion to Dismiss (ECF No. 27, "MTD") at 12. In support, Defendant cites a 2019 decision from *In re Google Location History Litigation* in which the court stated that a "person's general location" is not typically protected. MTD at 12-13 (citing 428 F. Supp 3d 185, 198-99 (N.D. Cal. 2019) (*"Google Location I"*)). This ignores a later decision from the same case, issued by the same court after the Ninth Circuit's decision in *Facebook Internet Tracking*, which denied Google's motion to dismiss and instead held that "Plaintiffs' allegations that Google collected and stored comprehensive location data without Plaintiffs' consent are sufficient to show that Plaintiffs had a reasonable expectation of privacy in the sum of that data" and, thus, that Plaintiffs stated claims for constitutional and common law invasion of privacy. *In re Google Location Hist. Litig.,* 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) (*"Google Location II*").

There, the "continuous flow" of personal data to the defendant, "even of applications that have nothing to do with the user's locations," was sufficient. *Id.* at 1155. Likewise, here, Plaintiffs allege that Defendant's applications and SDK secretly transmitted Plaintiffs' location data—as often as every few seconds—along with time stamps and unique identifiers. ¶¶ 25, 28. And that information is transmitted through applications that have nothing to do with the user's location—like those for shopping lists or shopping rewards. ¶¶ 42-43. Plaintiffs therefore adequately allege that Defendant invaded their reasonable and protectable privacy interests.

Like Defendant's out-of-context citation to *Google Location I*, its other cited authority is unavailing. Most of the cases InMarket cites do not actually address whether the plaintiffs had a reasonable expectation of privacy in their data—but whether the defendant's invasion was highly offensive,[4] a fact question for the jury where, as here, the complaint adequately alleges a plausible violation of social norms, *see infra.* Many of InMarket's cited cases were also decided before 2020, and thus, to the extent they are inconsistent with the Ninth Circuit's controlling decision in *Facebook Internet Tracking*, they fail to describe or apply the applicable law as it currently stands. And none of InMarket's more recent authority fairs any better.

In *Esparza v. Kohl's, Inc.*, --- F.Supp.3d ----, 2024 WL 1152732, at *7 (S.D. Cal. Mar. 18, 2024), for example, the complaint did "not plead any facts to suggest Defendant collected intimate or sensitive personally identifiable information." *Id.* at *8. The court therefore distinguished it from cases that survived the motion to dismiss with allegations about the disclosure of unique search terms, a high volume of collected information, or geolocation data. *Id.* Here, in contrast, Plaintiffs allege that Defendant collected and shared large swaths of sensitive geolocation data along with unique identifiers.

In *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022), the plaintiffs made too many leaps between the information tracked and the invasion of privacy, rendering their allegations "implausible." For example, the plaintiffs provided no details regarding how Google could infer intimate details about pregnancy from data capturing how long a user used an application to track their menstrual cycle. *Id.* Those facts are not present here.

*D'Angelo v. FCA US, LLC*, --- F. Supp. 3d ---, No. 3:23-cv-00982, 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024), is likewise distinguishable. That case involved the alleged collection of website chat conversations, but there was no suggestion that the data was sensitive or that the defendant "set out an expectation that it would not collect chat conversations" conducted on its

[4] *See, e.g., Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding that consumers *did* have a reasonable expectation of privacy in the data at issue, though the intrusion was not "highly offensive"); *Esparza v. Kohl's, Inc.*, No. 23-CV-01988, 2024 WL 1152732, at *8 (S.D. Cal. Mar. 18, 2024) (discussing only whether the allegations amounted to a "serious" invasion of privacy).

own website. *Id.* at *17. Absent from that case was any allegation that the defendant continuously tracked or shared the plaintiffs' location data, either online or in the real world. *See generally id.*

Therefore, Plaintiffs allege a reasonable and protectable expectation of privacy in their location data.

**B. InMarket's Conduct Was Offensive And Egregious.**

Second, InMarket contends that Plaintiffs did not allege a "highly offensive" or "egregious" breach of societal norms—suggesting its undisclosed tracking and disclosure of Plaintiffs' personal and private whereabouts was simply "routine commercial behavior." MTD at 14-15. As a threshold matter, "questions of whether conduct is 'egregious,' 'offensive,' or violates 'social norms' tend by their very nature to be subjective . . . [and] these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *see also Google Location II*, 514 F. Supp. 3d at 1157 ("Whether [defendant's] collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact.") (citing *Facebook Internet Tracking*, 956 F.3d at 606). Indeed, the Ninth Circuit held that this determination "requires a holistic consideration of factors" and raises "an issue that cannot be resolved at the pleading stage." *Facebook Internet Tracking*, 956 F.3d at 606.

Here, Plaintiffs have identified sufficient facts to survive a motion to dismiss because they contend that InMarket collected their information surreptitiously, continuously, and in unexpected ways. *See, e.g., id*. at 606; *Google Location II* at 1157-58; *see also* ¶ 25 (InMarket receives precise latitude and longitude, a time stamp, and a unique mobile device identifier as often as every few seconds when the device is actively moving); ¶ 27 (Defendant collects sensitive information about, e.g., where consumers live, work, worship, attend school, receive medical care); ¶ 33 (InMarket clients can target customers based on their religion, wealth, or health); ¶ 42 (This invasive technology is incorporated into unexpected applications like an application used for shopping lists, and another that awards shopping rewards for tasks like watching videos and taking online quizzes). Defendant's practices are egregious, highly offensive, and violate social norms.

### C. InMarket Acted Intentionally.

Finally, citing no authority in support, InMarket contends that "Plaintiffs fail to plead that InMarket acted with the requisite intent." MTD at 15. But Plaintiffs allege that InMarket intentionally and specifically designed its applications and its SDK to track Plaintiffs' location, affirmatively collected Plaintiffs' private data, took steps to aggregate that data, and then sold it for profit. *See, e.g.,* ¶¶ 4, 18-21, 27-30, 115, 136. That conduct was neither passive nor accidental, Plaintiffs' allegations satisfy the elements of their claims for invasion of privacy, and the motion should be denied.

## II. DEFENDANT VIOLATED CDAFA BY KNOWINGLY ACCESSING PLAINTIFFS' AND CLASS MEMBERS' SMARTPHONES WITHOUT CONSENT.

CDAFA prohibits the knowing access of a computer system or computer data when a person:

> (1) Knowingly accesses and without permission . . . uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
>
> * * *
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

*Greenley*, 684 F. Supp. 3d at 1047–48 (quoting Cal. Penal Code § 502(c)(1)–(2), (7)).

Here, Defendant violated CDAFA by knowingly accessing Plaintiffs' and Class Members' smartphones without their permission through use of the InMarket SDK, which intercepts and transmits data, communications, and personal information concerning Plaintiffs and Class Members. Defendant then knowingly used the intercepted data unjustly to enrich itself at the expense of Plaintiffs and other Class Members. ¶¶ 91-92.

Defendant argues that Plaintiffs' CDAFA claim fails because they have failed to allege "damage or loss by reason of a violation" as required by Cal. Penal Code § 502(e)(1). MTD at 16. That is wrong. Plaintiffs allege that "Defendant was unjustly enriched by intercepting, acquiring, taking, or using Plaintiffs' and Class Members' data, communications, and personal information

without their permission, and using it for Defendant's own financial benefit." ¶ 96. Courts repeatedly have found that such unjust enrichment allegations are sufficient to state a CDAFA claim. *See Esparza*, 2024 WL 1152732, at *7 (finding the plaintiff stated a CDAFA claim where he "sufficiently allege[d] Defendant has a stake in the value of his misappropriated data"); *Facebook Internet Tracking*, 956 F.3d at 599–601 ("Because California law recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data . . . Thus, Plaintiffs sufficiently alleged a state law interest whose violation constitutes an injury sufficient to establish standing to bring their claims for CDAFA violations . . ."); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023) ("The Ninth Circuit's decision [in *Facebook Internet Tracking*] stands for the proposition that plaintiffs can state an economic injury for their misappropriated data. Because plaintiffs proffer evidence that there is a market for their data—one Google itself has created—the Court cannot rule, as a matter of law, that plaintiffs suffered no damages under CDAFA."); *Greenley*, 684 F. Supp. 3d at 1047–49 (finding plaintiff stated a CDAFA claim based on essentially the same conduct alleged here).

On the issue of damages, *Esparza* is instructive. There, the plaintiff alleged he visited the defendant's website and engaged with an agent of the defendant through the website's chat feature, which allegedly allowed a third party to eavesdrop on the communication, de-anonymize the plaintiff using embedded malware, and insert the plaintiff's information into a database which was sold for profit. *Esparza*, 2024 WL 1152732, at *1. The defendant moved to dismiss the CDAFA claim, arguing the plaintiff did "not plead any cognizable 'damage or loss' as required under CDAFA." *Id.* at *7. The court rejected the defendant's argument and concluded the plaintiff "sufficiently allege[d] Defendant has a stake in the value of his misappropriated data" based on the allegation that the defendant and the alleged eavesdropper "all profit from secretly exploiting their ability to identify anonymous individuals who have visited Defendant's website." *Id.* ("Plaintiff alleges there is a market for his data that Defendant and ASI allegedly profit from.").

So too here, Plaintiff alleges that "Defendant was unjustly enriched by intercepting, acquiring, taking, or using Plaintiffs' and Class Members' data, communications, and personal

information without their permission, and using it for Defendant's own financial benefit." ¶ 96; *see also* ¶¶ 91-92. Specifically, Defendant uses its InMarket SDK spyware to access users' data and to monetize it by combining that data with data from other sources and selling it to advertisers. ¶¶ 31-52. Thus, Plaintiffs plausibly plead Defendant has a "stake in the value of [their] misappropriated data," which is sufficient to state a claim under CDAFA. *Esparza*, 2024 WL 1152732, at *7.

Defendant further argues that Plaintiffs fail plausibly to allege that InMarket "knowingly" obtained any geolocation information about them "without permission," because "Plaintiffs have intentionally failed to identify or describe the disclosures made to them when they downloaded the third-party applications on which their claims are based . . . [and,] even assuming such disclosures were inadequate, they never allege that InMarket was aware of any deficiencies or had any reason to believe that Plaintiffs were unaware that the applications could share data with entities other than the third-party application developers." MTD at 17. Defendant's argument is wrong and belies Plaintiffs' factual allegations.

*First*, Plaintiffs plead that "Defendant knowingly accessed Plaintiffs' and Class Members' smartphones without their permission by including within the SDK that Defendant provides to developers, software that intercepts and transmits data, communications, and personal information concerning Plaintiffs and Class Members." ¶ 91. As to disclosures from the third-party applications, Plaintiffs allege that Defendant acquires Plaintiffs' "private data without . . . informed consent . . . [and] fails to notify consumers that it then aggregates that location data with other data points to develop consumer profiles" to be sold to advertisers and used for targeted advertising. ¶ 4. Moreover, Plaintiffs allege that Defendant does not verify that third-party application owners obtain the requisite consent from consumers and that Defendant does not provide enough information to third-party application owners about the functioning of the InMarket SDK spyware and Defendant's use of data to permit them to obtain informed consent. ¶¶ 53-59. Indeed, Plaintiffs plead that Defendant's own disclosures are grossly deficient with respect to the applications they own—Defendant merely states that users' location data "will be used for the app's functionality," not that such data will be harvested by Defendant and sold downstream to advertisers. ¶ 45. Defendant intentionally hid its

illegal activities from Plaintiffs and Class Members. Thus, Plaintiffs adequately allege that the third-party application did not gain Plaintiffs' informed consent regarding Defendant's challenged conduct.

Defendant's argument that "Plaintiffs knowingly and intentionally downloaded the third-party applications to their devices and gave those devices access to geolocation information while using the applications" does nothing to advance Defendant's position. (MTD at 17.) It is one thing to share geolocation data for purposes of the functionality of an application as it is being used, but it is another thing altogether for Defendant to harvest and appropriate users' geolocation data in order to sell it to advertisers, with no disclosure to, or consent from, Plaintiffs. ¶¶ 4, 6, 9, 45. Defendant's argument for dismissal of Plaintiffs' CDAFA claim fails.

## III. DEFENDANT'S SDK SPYWARE IS AN ILLEGAL PEN REGISTER.

Under California law, a pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). A pen register is not limited to physical devices and can include software. *Moody v. C2 Educ. Sys. Inc. et al.*, No. 2:24-cv-04249, 2024 WL 3561367, at *2 (C.D. Cal. July 25, 2024); *Greenley*, 684 F. Supp. 3d at 1050. "[A] person may not install or use a pen register . . . without first obtaining a court order[.]" Cal. Penal Code § 638.51; *see also Moody*, 2024 WL 3561367, at *2 ("To state a claim under § 638.51, a plaintiff must allege that a defendant installed and used a pen register or trap and trace device without first obtaining a court order.").

Here, Plaintiffs state a claim under § 638.51 because: (1) the InMarket SDK spyware is a pen register, given that it records addressing or signaling information—*i.e.*, Plaintiffs' and Class Members' location data and personal information—from the electronic communications transmitted over their smartphones; and (2) as Defendant concedes, Defendant did not obtain a court order permitting its use of the InMarket SDK spyware on Plaintiffs' and Class Members' devices. ¶¶ 104-105. Further, Plaintiffs did not consent to Defendant's use of a pen register. ¶¶ 4, 9, 12, 84.

Courts have found that software like Defendant's InMarket SDK qualifies as a pen register. For example, in *Greenley*, 684 F. Supp. 3d at 1050-51, a case nearly identical to this one, the court found that use of embedded SDK software to collect geolocation data constituted a pen register under California law. Specifically, in *Greenley*, like here, "Defendant coded its SDK for data collection and embedded it in third-party apps; the SDK secretly collected app users' data; and then Defendant packaged that data and sold it to clients for advertising purposes." *Id.* at 1035. The data collected by the defendant included "geolocation" data. *Id.* The defendant in *Greenley*, just like Defendant here, argued that "its SDK is not a 'pen register' but provide[d] no caselaw in support" of its argument. *Id.* at 1050. Applying the language of the statute, the court concluded that California's statute is "inclusive as to the form of the collection tool—'a device or process,'" and that a "process" includes "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Id.*

Similarly, in *Moody*, the plaintiff alleged the defendant illegally used a pen register where the defendant used TikTok software that "uses 'fingerprinting,' a process through which the site collects data from anonymous visitors and matches that data with TikTok's database to uncover the visitors' identities." *Moody*, 2024 WL 3561367, at *1. The defendant argued that the TikTok software was not a pen register because, *inter alia*, the statute only covers physical devices and because "the TikTok Software collects the 'contents of a communication,' and not dialing routing, addressing, or signaling information." *Id.* at *2. The court rejected both arguments, reasoning that "tracking software could plausibly constitute a pen register under §§ 638.50 and 638.51" and that the gathering of "browser and device data plausibly fall within the scope of the statute." *Id.* at *4.

Despite agreement among federal courts in California that software such as Defendant's InMarket SDK qualifies as a pen register, Defendant attempts to distinguish *Greenley*, arguing that "the plaintiffs [in that case] alleged that the defendant received far more than location data through its SDK." MTD at 18. However, this purported distinction does not change the analysis. Defendant does not challenge the *Greenley* court's reasoning that SDK software which identifies consumers, gathers data, and correlates the data qualifies as a "process" under the statute. Nor does Defendant

explain why a different result should follow here when, just as in *Greenley*, Plaintiffs allege that Defendant surreptitiously captured their location data through use of SDK software. *Greenley*, 684 F. Supp. 3d at 1050-51; *Moody*, 2024 WL 3561367, at *4 ("Having found that the browser and device data plausibly fall within the scope of the statute, the Court need not determine whether the form data also falls within the scope of the statute."). Defendant recorded Plaintiffs' location data, which is addressing or signaling information, from the electronic communications transmitted by their smartphones. *Moody*, 2024 WL 3561367, at *4 (the gathering of "browser and device data plausibly fall within the scope of the statute"). Nothing more is required.

Defendant's argument that the challenged conduct "bares no relation to the historical understanding of a pen register" is meritless. MTD at 18. As the *Greenley* court explained, California's pen register statute is worded broadly and designed to capture tools beyond just physical pen registers recording phone numbers dialed. *Greenley*, 684 F. Supp. 3d at 1050 ("Traditionally, law enforcement used 'pen registers' in investigations to record all numbers called from a particular telephone, and 'pen registers' required physical machines. Today, pen registers take the form of software. . . [T]he Court cannot ignore the expansive language in the California Legislature's chosen definition [of pen register]"); *Moody*, 2024 WL 3561367, at *2 ("Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement.").

In a footnote, Defendant argues that Plaintiffs fail "to allege facts plausibly suggestive of a lack of consent." MTD at 19 n.5. *First*, Plaintiffs are not required to prove lack of consent as part of their *prima facie* case; instead, they need only show that "defendant installed and used a pen register or trap and trace device without first obtaining a court order." *Moody*, 2024 WL 3561367, at *2. Consent is an affirmative defense that Defendant bears the burden of proving. *Greenley*, 684 F. Supp. 3d at 1048 ("Defendant carries the ultimate burden of proving a consent defense."); *United States v. Ogden*, 2021 WL 858467, at *3 (N.D. Cal. Mar. 8, 2021) ("The difference between the plaintiff's *prima facie* case and the defendant's affirmative defenses is also apparent when considering the different burdens of proof for those issues: plaintiffs always have the burden to prove their claims,

but '[an affirmative defense] is a defense on which the defendant has the burden of proof.'") (quoting *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010)).

*Second*, Plaintiffs have affirmatively pled that they did not consent to Defendant's conduct. ¶¶ 9, 12.[5] "That is sufficient at this stage." *Esparza*, 2024 WL 1152732, at *3.

## IV. DEFENDANT VIOLATED CIPA BY EAVESDROPPING ON PLAINTIFFS' COMMUNICATIONS AND BY USING THE EAVESDROPPED COMMUNICATIONS.

Plaintiffs allege violations of CIPA, which creates avenues for relief where a person:

> (1) willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit . . . or
>
> (2) uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained . . . .

Cal. Penal Code § 631(a); *see also Heerde v. Learfield Commc'ns, LLC*, --- F. Supp. 3d ---, 23-cv-04493, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (quoting *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897 (N.D. Cal. 2023)).

### A. Defendant Eavesdropped Upon The Contents Of Plaintiffs' Electronic Communications In Violation Of CIPA.

To plausibly plead a violation of the eavesdropping prong of CIPA, plaintiffs must allege that the violator (1) read, or attempted to read, contents[6] of a message or similar communication; (2) without consent of all the parties; (3) while the message was in transit, passing over a wire, or being

---

[5] Defendant argues that Plaintiffs do not allege "what privacy and data collection/use disclosures they received when they downloaded" the third-party software applications. MTD at 3. However, this is immaterial because (1) consent is an affirmative defense for which Defendant bears the burden of proof and (2) Plaintiffs have alleged that Defendant does not provide third-party application developers with requisite information to obtain informed consent (even if they wanted to), which demonstrates that regardless of what third-party application Plaintiffs downloaded, informed consent for the conduct at issue would not have been obtained. ¶¶ 53-59.

[6] "Contents" "include[ ] any information concerning the substance, purport, or meaning of [a] communication.'" *See* 18 U.S.C. § 2510(8); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation omitted).

sent or received from within California; and (4) did so willingly. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 976–77 (C.D. Cal. 2023). Here, Plaintiffs adequately allege each element of their claim.

*First*, Plaintiffs plausibly allege that Defendant learned or attempted to learn the contents of their communications. They allege that "Defendant's SDK communicates the user's affirmative actions, such as clicking a link, installing an app, selecting an option, or relaying a response, and constitute communications within the scope of the Wiretapping Act." ¶ 112. Plaintiffs also allege that "Defendant uses and attempts to use or communicate the meaning of Plaintiffs' and Class Members' communications by ascertaining their personal information, including their geolocation and places that they have visited, in order to sell Plaintiffs' and Class Members' personal information to third parties." ¶ 118.

Further, Plaintiffs allege "Defendant violated Cal. Penal Code § 631 by knowingly accessing and without permission accessing Plaintiffs and Class Members' devices in order to obtain their personal information, including their device and location data and personal communications with others." ¶ 128; *see also* ¶ 129 ("Defendant violated Cal. Penal Code § 631 by knowingly and without permission intercepting, wiretapping, accessing, taking and using Plaintiffs' and the Class Members' personally identifiable information and personal communications with others.").

Defendant argues "Plaintiffs do not allege that they engaged in any communicative act or behavior with respect to the third-party applications underlying their claims." MTD at 20. That is wrong. As indicated above, Plaintiffs allege that "Defendant's SDK communicates the user's affirmative actions, such as clicking a link, installing an app, selecting an option, or relaying a response," and that Defendant accessed their "personal communications with others." ¶¶ 112, 128-129. Defendant acknowledges these allegations undermine its argument but characterizes them as "conclusory." MTD at 20 n. 7. However, Plaintiffs' allegations regarding Defendant's interception of the contents of their communications are sufficient at this stage because Plaintiffs are not required to plead specific communications, but need only show that the intercepted communications were more than just "record information." *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020,

1027 (C.D. Cal. 2023) ("Moreover, there is no requirement that Byars specifically allege the exact contents of her communications with Goodyear. Rather, Byars merely needs to show that the contents were not record information, such as her name and address."); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023), *motion to certify appeal denied,* 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) ("[T]o the extent Disney suggests Plaintiffs must plead the exact communications they had with the ESPN.com website, other courts have rejected that position.").

Where, as here, a plaintiff alleges that the defendant intercepted personal information, such communications "plausibly contain more than mere record information." *Byars*, 654 F. Supp. 3d at 1027. Plaintiffs' allegations, taken together, plausibly establish that Defendant intercepted the "contents" of their communications, which exceeded mere record information.

Additionally, Plaintiffs plead that Defendant accessed their communications without their consent (¶¶ 125-126); that Defendant accessed their communications while they were "in transit or passing over any wire, line or cable or were being sent from or received at any place within California" (¶ 125); and that Defendant acted willfully in doing so (¶ 125). Accordingly, Plaintiffs adequately plead a claim under CIPA.

**B. In Further Violation Of CIPA, Defendant Unlawfully Used The Contents Of The Eavesdropped Communications.**

CIPA also creates a cause of action where a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." Cal. Penal Code § 631(a); *Heerde*, 2024 WL 3573874, at *4 (quoting same). Plaintiffs allege that "Defendant transmits a copy of Plaintiffs' and Class Members' communications to itself . . . [and] uses the contents of the communications to sell to third parties and in other methods for its own pecuniary gain." ¶ 115. Accordingly, Plaintiffs plausibly plead a violation of CIPA on this additional basis.

Defendant's only argument with respect to this prong is that "because Plaintiffs have failed to plead a claim under the . . . second prong of Section 631(a), their claim under the third prong (i.e., that InMarket used improperly collected information) necessarily fails as well." MTD at 21. Defendant's argument is wrong because, as set forth above, Plaintiffs adequately plead a violation of the second, eavesdropping prong of § 631.

## V. COURTS REGULARLY ALLOW UNJUST ENRICHMENT CLAIMS TO PROCEED AS QUASI-CONTRACT CLAIMS FOR RESTITUTION.

It is well established that, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted); *see also, e.g.*, *Google Location II*, 514 F. Supp. 3d at 1158-59 (denying motion to dismiss unjust enrichment claim where plaintiffs alleged Google surreptitiously collected and profited from their location data; citing *Astiana* in support); *Jordan v. Wonderful Citrus Packing LLC*, No. 18-cv-00401, 2018 WL 4350080, at *4 (E.D. Cal. Sept. 10, 2018) (denying motion to dismiss unjust enrichment claim and citing *Astiana*). "'The doctrine applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value.'" *Google Location II*, 514 F. Supp. 3d at 1159 (quoting *Letizia v. Facebook Inc*., 267 F. Supp. 3d 1235, 1253 (N.D. Cal. 2017)). Plaintiffs' allegations that Defendant profited from their personal and private data, and retains that benefit, are sufficient to state an unjust enrichment claim. ¶¶ 7, 10, 150. Defendant's motion to dismiss this claim should be denied.

## VI. PLAINTIFFS STATE A CLAIM FOR VIOLATION OF THE UCL.

Plaintiffs lost "money or property" within the meaning of California's UCL (Cal. Bus. & Prof. Code § 17204) because the location data that Defendant surreptitiously took from them has "has monetary value for which they were not paid" (*Brown*, 685 F.Supp.3d at 942 (denying motion for summary judgment on UCL claim where plaintiffs alleged Google surreptitiously collected their private internet browsing data)). To the extent the Court agrees with Defendant that Plaintiffs "must allege the existence of a market for their data and the impairment of the ability to participate in that market" (MTD at 22 (citations omitted)), Plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Garmon v. Cnty. of Los Angeles*, 828 F.3d 837, 842 (9th Cir. 2016) ("A district court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities.").

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss. Should the Court find dismissal of any claim is warranted, Plaintiffs ask for leave to amend the Complaint.

Dated: September 16, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*
L Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
jdiamond@bursor.com

**AHDOOT & WOLFSON, PC**
Tina Wolfson (SBN 174806)
Robert Ahdoot (SBN 172098)
Theodore Maya (SBN 223242)
Deborah De Villa (SBN 312564)
Sarper Unal (SBN 341739)
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Tel: 310.474.9111
Fax: 310.474.8585
Email: twolfson@ahdootwolfson.com
rahdoot@ahdootwolfson.com
tmaya@ahdootwolfson.com
ddevilla@ahdootwolfson.com
sunal@ahdootwolfson.com

**AHDOOT & WOLFSON, PC**
Melissa Clark (*pro hac vice*)
521 5th Avenue, 17th Floor
New York, NY 10175
Tel: 310.474.9111
Fax: 310.474.8585

Email: mclark@ahdootwolfson.com

*Attorneys for Plaintiffs*